UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRENCE TAYLOR,

    Plaintiff,

v.

File No. 2:14-cv-175

HON. ROBERT HOLMES BELL

SCOTT SMITH et al.,

    Defendants.
_____/

# **O P I N I O N**

Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R&R") (ECF No. 46) recommending that Plaintiff's request for injunctive relief (ECF No. 29) and motion for a temporary restraining order (ECF No. 34) be denied. The matter is before the Court on Plaintiff's objections to the R&R. (ECF Nos. 47, 48.)

This Court is required to make a de novo determination of those portions of the R & R to which specific objection has been made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

## I.

Plaintiff is incarcerated at the Chippewa Correctional Facility (URF). In his *pro se* complaint dated August 4, 2014, Plaintiff alleges Warden Jeff Woods, Property Room Officer S. Smith, Assistant Resident Unit Supervisor (ARUS) J. Clark, Resident Unit Manager (RUM) Robert Norton, and Account Technician Joyce Ross violated his First and Fourteenth Amendment rights in June 2013. (ECF No. 1.)

When Plaintiff arrived at Chippewa Correctional Facility, he had two state-issued duffel bags full of personal property. Plaintiff alleges that Defendant Smith told him he could only keep one duffel bag, despite the fact that Plaintiff advised Smith that some of Plaintiff's excess property was permissible legal property. Michigan Department of Corrections Policy Directives provide:

> If the prisoner's property exceeds allowable limits due to items claimed to be legal property, a hearing shall be conducted by a hearing officer from the Department of Licensing and Regulatory Affairs to determine if the items are legal property and thus allowed to be possessed. Prisoners who have allowable excess legal property are required to store the property in footlockers designated for that purpose, which shall be purchased by the prisoner. A prisoner who lacks sufficient funds to purchase the footlocker shall be loaned the necessary funds[.]

P.D. 04.07.112(O). Rather than receive a hearing conducted by a hearing officer from the Department of Licensing and Regulatory Affairs, Plaintiff alleges that Defendant Clark held an administrative hearing, separated the property outside of Plaintiff's presence, and only offered Plaintiff half of his legal property. In his brief, Plaintiff contends that "the half he was being denied contained his court pleading of both his criminal and civil case." (ECF No.

2

30, PageID.195.) A review of the record indicates differently, however. In a grievance, Plaintiff stated that Defendant Clark "refused to give me the legalwork because I refused to sign the hearing report due to the fact that I did not agree with the report." (ECF No. 1-1, PageID.29.) The response similarly stated, "ARUS Clark states that he separated all prisoner paperwork (anything that could have bee[n] legal in nature[)] and was willing to give that to the prisoner but the prisoner refused to sign the NOI to indicate receipt of property. He was insistent that he wanted all of excess personal and legal. In effect prisoner refused to take possession of his legal papers." (*Id.*) Without the denied legal documents, Plaintiff states that he is prevented from filing a motion for post-conviction relief based on the discovery of new evidence. Plaintiff contends that these actions resulted in a denial of due process rights and a denial of access to the courts.

Further, Plaintiff alleges that Prison Counselor McDonald refused to send out Plaintiff's legal mail on July 24, 2015, which resulted in the denial of access to the courts. Thus, Plaintiff filed his motion for a temporary restraining order. (ECF No. 34.) Plaintiff requests that this Court "issue an order restraining McDonald from frustrating, hindering, or impeding his access to the Court, while administrative remedies pertaining to McDonald's 7/24/15 actions of refusing to accept the plaintiff's legal mail are properly exhausted. (*Id.* at PageID.253.)

The magistrate judge recommended denying Plaintiff's motions, finding that Plaintiff "failed to meet the heavy burden establishing the need for injunctive relief." (R&R, ECF No. 46, PageID.283.)

## II.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). When exercising that discretion, a court considers whether the plaintiff has established: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, when a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

**III.**

As a threshold matter, the only specific objection Plaintiff raises to the R&R is that the magistrate judge did not "read plaintiff's pro se complaint indulgently, and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible." (ECF No. 48, PageID.294.) Plaintiff alleges that the magistrate judge failed to consider Plaintiff's affidavits, which stated that, contrary to Defendant Clark's assertion, Plaintiff was not offered all of his legal property. Plaintiff confuses the standard of review for a 12(b)(6) motion with the standard for injunctive relief. Here, the magistrate judge properly considered and balanced the four factors necessary to determine whether injunctive relief is proper, and his statement that "Plaintiff could have chosen to keep his legal materials, by simply signing the disposition and making that choice," is supported in the record. (ECF No. 1-1, PageID.29.)

The remainder of Plaintiff's objections consist of arguments similar to those raised before the magistrate judge.

**A. Likelihood of Success on the Merits**

**1. Due Process Claim**

First, Plaintiff contends that "the mandatory language of [MDOC Policy Directive] 04.07.112 created a protected liberty interest which entitled the plaintiff to a legal hearing. The defendants denied the plaintiff due process when they refused him a legal hearing." (ECF No. 48, PageID.292.) Construing Plaintiff's claim and complaint liberally, the Court

will also address whether the deprivation of the legal materials deprived him of a property interest in violation of due process.

### a. Liberty Interest

The Policy Directive cited by Plaintiff states:

> If the prisoner's property exceeds allowable limits due to items claimed to be legal property, a hearing shall be conducted by a hearing officer from the Department of Licensing and Regulatory Affairs to determine if the items are legal property and thus allowed to be possessed. Prisoners who have allowable excess legal property are required to store the property in footlockers designated for that purpose, which shall be purchased by the prisoner. A prisoner who lacks sufficient funds to purchase the footlocker shall be loaned the necessary funds[.]

P.D. 04.07.112(O). Plaintiff contends that the use of the term "shall" in the above language creates a liberty interest in a property-deprivation hearing provided by a hearing officer. Plaintiff bases this argument on a series of cases deriving from *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979), where an inmate argued he had been unconstitutionally denied parole. The statute in question ordered that the prisoner must be released at a certain time unless one of four specific conditions were met. *Id.* at 11. "The Court apparently accepted the inmates' argument that the use of the word 'shall' in the statute created a legitimate expectation of release absent the requisite finding that one of the justifications for deferral existed." *Sandin v. Conner*, 515 U.S. 472, 479 (1995).

In 1995, however, the Supreme Court clarified when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. The Court found that the cases that Plaintiff relies on had shifted "the focus of the liberty interest inquiry to

one based on the language of a particular regulation, and not the nature of the deprivation, [which] encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Sandin*, 515 U.S. at 481. The Court noted that, as a result, many courts had "inferred from the mandatory directive that a finding of guilt 'shall' be imposed under certain conditions," and stated:

> Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the result of the negative implication jurisprudence is not to require the prison officials to follow the negative implication drawn from the regulation, but is instead to attach procedural protections that may be of quite a different nature.

*Id.* at 481-82. The Sixth Circuit has stated:

> [T]he Supreme Court in *Sandin* . . . instructed that a state regulatory scheme does not create a liberty interest merely because the regulations incorporate "language of an unmistakably mandatory character." Apart from any mandatory language in a regulation, the plaintiff must also prove that he suffered restraint which imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (citing *Sandin*, 515 U.S. at 484)).

The Court finds that Plaintiff is unlikely to succeed on his claim because the actions leading to the deprivation of Plaintiff's legal documents did not result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The Sixth Circuit has recognized that the teachings of *Sandin* prevent a prisoner "from claiming

7

that by negative inference, [a prison] department regulation created an entitlement to entrust his [legal] documents to whomever he pleases." *Ruiz v. Fisher*, No. 96-4212, 1998 WL 661139, at *4 (6th Cir. Sept. 2, 1998). Similarly, *Sandin* supports a finding that MDOC policies do not create a constitutional entitlement for a prisoner, transferring to a new prison, to possess personal and legal property in any volume and manner in which he chooses. Plaintiff does not identify, nor is the Court aware of, any liberty interest that exists in possessing a certain amount of legal documents.

### b. Property Interest

To the extent that Plaintiff alleges that the deprivation of his materials deprived him of a property interest, this Court finds that Plaintiff has failed to show a substantial likelihood of success on this claim. Under the doctrine established in *Parratt v. Taylor*, 451 U.S. 527 (1981), a person deprived of property by a 'random and unauthorized act' of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *Ruiz*, 1998 WL 661139, at *5 ("[W]here

8

a prisoner alleged that prison officials seized some of his property as contraband and intentionally destroyed it without following prison regulations, we held that the *Parratt* doctrine applied.").

Plaintiff contends that the property was taken in a manner inconsistent with required state procedures. The deprivation is best characterized as a random and unauthorized act of state employees. *See Ruiz*, 1998 WL 661139, at *5 n.4 (finding conduct random and unauthorized when plaintiff claimed "that due process was violated because the [prison rules infraction board] *failed* to follow prison regulations, *i.e.*, they acted *contrary* to Ohio's established administrative procedure") (emphasis in original). Therefore, the burden is on Plaintiff to plead and prove the inadequacy of state post-deprivation remedies.

Plaintiff has not sustained his burden in this case. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland v. Machulis*,

57 F.3d 476, 480 (6th Cir. 1995). Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his legal materials.

To the extent that Plaintiff argues that his legal materials are irreplaceable, the Supreme Court has confronted a similar argument. In *Hudson*, the prisoner argued that, amongst his taken property, were legal documents that "may have contained things irreplaceable and incompensable" and, therefore, a suit in tort would not provide adequate compensation. 468 U.S. at 535. The Court rejected this argument, stating that "[i]f the loss is 'incompensable,' this is as much so under § 1983 as it would be under any other remedy. In any event, that [the prisoner] might not be able to recover under these remedies the full amount which he might receive in a § 1983 action is not, as we have said, determinative of the adequacy of the state remedies." *Id.*

Accordingly, the Court finds that Plaintiff has not shown a substantial likelihood of success in regard to his due process claims.

### 2. Denial of Access to the Courts

Plaintiff next contends that "when the defendants confiscated and/or refused to return the plaintiff's legal property which contained his relief from judgment motion where he challenged his criminal conviction, they prevented said motion from presentation. The plaintiff has shown that defendants denied him court access." (ECF No. 48, PageID.295.)

The Court finds that Plaintiff has not established a likelihood of success on the merits for this claim. Plaintiff contends that the documents taken include "civil pleadings, criminal pleadings (motion of recusal, motion of mandamus, habeas corpus, and motion requesting relief from judgment) as well as criminal trial transcripts." (Compl. ¶ V, ECF No. 1, PageID.12.) In his supplemental complaint, Plaintiff references "cases involving [his] child." (ECF No. 33-1, PageID.224.) Plaintiff notes that his legal documents are needed to "fashion a proper argument and to search for new issues" in his post-conviction motion requesting relief from judgment. (Mot. for Injunctive Relief, ECF No. 29, PageID.184.) In Plaintiff's objections to the R&R, he states that he desires "to raise a claim of newly-discovered evidence amongst other claims." (ECF No. 48, PageID.297.) Plaintiff states that the most important case he has pending is before the Michigan Court of Appeals and "pertains to his parental rights being restored." (Mot. for Preliminary Injunction, ECF No. 34, PageID.253.)

First, "a prisoner's right to access the courts extends to direct appeals [from a criminal conviction], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Plaintiff therefore only has the ability to challenge the denial of access to the courts with respect to these claims.

Second, "[t]o bring a § 1983 claim for violation of a prisoner's right of access to the courts, the prisoner must 'plead and prove prejudice stemming from the asserted violation.'" *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "In other words, he must demonstrate 'actual injury,' by

showing that his underlying claim was non-frivolous." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "In a denial-of-access case, 'the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)). Ultimately, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Harbury*, 536 U.S. at 417. "Essentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with the access to the courts, and the non-frivolous nature of the claim that was lost." *Brown*, 415 F. App'x at 612.

Here, as in *Brown*, Plaintiff's claim for denial of access to the courts "is entirely conclusory because he failed to allege the exact nature of the claims he sought to present." *Id.* at 613. Plaintiff has only listed the legal claims he has sought to present, and has not "provide[d] the facts upon which he based these claims, and therefore did not provide a way to assess whether they were non-frivolous." *See id.* Without this information, the magistrate judge had no basis to determine whether the denial of access claim had merit.

Third, this Court has stated that for a denial of access claim, "an inmate cannot show injury when he . . . could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the

property." *Jones v. Michigan Dep't of Corrs.*, No. 2:10-cv-249, 2011 WL 447017, at *4 (W.D. Mich. Feb. 1, 2011) (citing *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993)). As noted, Plaintiff's grievance initially stated that Defendant Clark "refused to give me the legalwork because I refused to sign the hearing report due to the fact that I did not agree with the report." (ECF No. 1-1, PageID.29.) The response to the grievance indicated that Plaintiff was offered any documents that could have been legal in nature, but that Plaintiff refused them because he wanted his personal property as well. As such, it appears that Plaintiff had the opportunity to retain the legal documents both when he was initially transferred and after the hearing.

As to Plaintiff's claim against McDonald, the magistrate judge noted that McDonald is not a defendant in this action, and that Plaintiff's requested relief—ordering McDonald to refrain from denying Plaintiff access to the courts in the future—is unnecessary and redundant due to the constitutional obligation that already exists. Plaintiff's attempt to add McDonald to this case has already been denied. (ECF No. 39, PageID.262.) Accordingly, the Court agrees with the magistrate judge's recommendation as to this claim.

**B. Irreparable Harm**

Plaintiff alleges that he is facing irreparable harm because, without his legal documents, he is unable to file his motion for post-conviction relief based on "newly-discovered evidence." Again, as Plaintiff has failed to demonstrate the existence of a non-frivolous claim, the Court is unable to discern the degree of harm facing Plaintiff.

**C. Interests of Third Parties and the Public**

As noted by the magistrate judge, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Decisions concerning prison security and grievances are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). For the reasons stated, the Court finds that this showing has not been made.

**IV.**

Because Plaintiff has failed to demonstrate the extraordinary need for injunctive relief, the Court will approve and adopt the magistrate judge's R&R recommending that Plaintiff's motions be denied. An order consistent with this opinion will enter.


Dated: January 15, 2016                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE