UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


TERRENCE TAYLOR #377991,

    Plaintiff,

v.                                              Case No.  2:14-cv-175
                                                       HON.  ROBERT HOLMES BELL

SCOTT SMITH, et al.,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

        Plaintiff Terrence Taylor, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Scott Smith and Jeffrey Clark. Both Plaintiff and Defendants have moved for summary judgment, pursuant to Fed. R. Civ. P. 56. (ECF No. 82, ECF No. 84.)

        Plaintiff's allegations arise from a series of events that occurred following his transfer to the Chippewa Correctional Facility. On June 20, 2013, Plaintiff met with Defendant Smith in the property room to discuss his possessions. PageID.404. Plaintiff had two duffle bags that were filled with his property. PageID.458. Pursuant to Michigan Department of Corrections Policy, prisoners are typically allowed only one duffle bag of property. PageID.421. In accordance with this policy, Defendant Smith informed Plaintiff that he was only permitted to keep one duffle bag. PageID.421. Plaintiff allegedly informed Defendant Smith that some of his excess property was legal property from pending lawsuits and that he wanted a hearing. PageID.421. At Defendant Smith's request, Plaintiff began to separate his property to make as much fit in one duffle bag as possible. PageID.458. While he was separating his items, Plaintiff

alleges that Defendant Smith said "this facility doesn't tolerate lawsuits and the last person who filed one found himself in the hole eating out of a straw." PageID.458. Plaintiff then left the property room with one duffle bag and left the excess property with Defendant Smith. PageID.458. According to the "Contraband Removal Record," the excess property left behind included fourteen books, a "stack of misc papers 12 high," and one ream of copy paper. PageID.429.

Pursuant to Michigan Department of Corrections Policy, a hearing regarding excess legal property shall be conducted by a hearing officer from the Department of Licensing and Regulatory Affairs (LARA). PageID.334-335. However, an Assistant Resident Unit Supervisor (ARUS), such as Defendant Clark, can conduct a hearing regarding excess property that is not legal. PageID.405. Because Defendant Smith determined the property was contraband/excess property and not legal property, he signed a Notice of Intent to Conduct an Administrative Hearing instead of notifying LARA. PageID.441.

On July 1, 2013, Defendant Clark conducted a hearing regarding Plaintiff's excess property. PageID.458. Prior to Plaintiff arriving at the hearing, the property was sorted into two stacks. PageID.459. Plaintiff claims that both stacks contained legal property and that he was not the individual who separated the property. PageID.459. Defendant Clark told Plaintiff that he could keep one stack but not the other. PageID.459. Plaintiff refused to take any of his property because he did not want to sign a form indicating he received his property. PageID.459. After Plaintiff refused to take any of his property, Defendant Clark determined that the excess property was contraband. PageID.459. Plaintiff also alleges that during this hearing, Clark stated "I hear you like to file petty lawsuits. You'll learn." PageID.459.

Plaintiff asserts four claims in this case: (1) Defendants violated his First Amendment right of access to the courts; (2) Defendants retaliated against Plaintiff for utilizing his First Amendment rights; (3) Defendants violated his rights to due process under the Fourteenth Amendment; and (4) Defendants violated his rights to equal protection under the Fourteenth Amendment. Both parties have briefed the issues and this matter is now ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen,*

*Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff first claims that Defendants violated his First Amendment right of access to the courts when they confiscated some of his legal materials. It is well-established that Prisoners have a fundamental right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*

*v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x. 171, 173 (6th Cir. 2004)).

In this case, Plaintiff has not alleged a sufficient actual injury. At his deposition, Plaintiff testified that he had some difficulties litigating his cases because Defendants confiscated police reports, trial transcripts, and legal books. PageID.425-426. Defendants point out that Plaintiff repeatedly stated that he never missed any deadlines or had any of his cases dismissed as a result of the Defendants' conduct. PageID.425-426. Moreover, in his brief, Plaintiff states that one of the documents that Defendants confiscated was his M.C.R. 6.502 (Relief from Judgment) motion. PageID.463. Plaintiff alleges that he could not file this motion because Defendant's confiscated it and that he could not reproduce the motion because he did not have copies of his transcripts. PageID.463. However, a motion for relief from judgment is not a direct appeal, habeas corpus application, or civil rights claim. See *Thaddeus-X*, 175 F.3d at 391. Thus, Plaintiff cannot use his failure to file his M.C.R. 6.502 motion to prove actual injury. In the opinion of the undersigned, Plaintiff has not shown he suffered actual injury as a result of his claimed denial of access to the courts.[1]

Plaintiff also asserts a First Amendment retaliation claim against Defendants. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from

---

[1] It should also be noted that after his deposition occurred, the Michigan Court of Appeals denied Plaintiff's application for leave to appeal for "lack of merit in the grounds presented." Plaintiff contends that the court denied his motion because he did not attach any transcripts. However, the court's denial does not mention anything about transcripts. PageID.474.

engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff alleges that Defendants confiscated his legal property in retaliation for filing lawsuits with the courts. To support this claim, Plaintiff states that Defendant Smith told him that the last person filing lawsuits was put in the hole and had to eat of a straw. PageID.458. Plaintiff further alleges that Defendant Clark stated "I hear you like to file petty lawsuits. You'll learn." PageID.458. Defendants contend that Plaintiff has not shown that the protected right was the motivating factor in confiscating the property. Page.ID.410. According to Defendant Clark, he would have taken the same action in the absence of any protected activity because the property was not legal property. Page.ID.446-447. In the opinion of the undersigned, it is apparent that questions of fact remain as to whether the property confiscated was legal property and whether Defendants made those comments.

In addition, Defendant Smith moved for qualified immunity for lack of personal involvement in the retaliation claim. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendant Smith contends that he did not have the ultimate authority to make a decision regarding Plaintiff's property. Instead, Defendant Smith could only request an administrative hearing on Plaintiff's property. Defendants cite *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999), where the court found that two prison officials could not be held liable for the firing of a prisoner because they did not have the authority to fire a prisoner. Even though the prison officials "instigated" the firing, the court granted them qualified immunity for lack of personal involvement. *Id.* Similar to the prison officials in *Shehee*, Defendant Smith cannot be held liable because he did not have the authority to dispose of Plaintiff's legal or personal property.

Next, Plaintiff asserts a due process claim. Under *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986), a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

In this case, Plaintiff has not alleged that the state post-deprivation remedies were inadequate. Numerous state post-deprivation remedies are available to Michigan prisoners. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B. Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a).

Instead of addressing the post-deprivation remedies, Plaintiff cites a case from the Third Circuit that found the *Parratt* doctrine does not apply to cases involving a deprivation of legal property that violated a prisoner's access to the courts. *See Zilich v. Lucht*, 981 F.2d 694 (3d Cir. 1992). However, as discussed above, Plaintiff has not alleged a sufficient actual injury to show that he was denied access to the courts. Therefore, in the opinion of the undersigned, the *Parratt* doctrine applies to this case, and Plaintiff's failure to show that the post-deprivation remedies were inadequate requires dismissal of Plaintiff's due process claim.

Plaintiff's last claim is an equal protection claim. Plaintiff asserts that his equal protection rights were violated because he was denied a legal hearing on his excess legal property while other similarly situated prisoners were granted a hearing. Plaintiff cites affidavits of three prisoners that state they received a hearing. PageID.62-65. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of

individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, prisoners do not have a fundamental right to hearings on excess legal property. Moreover, as discussed above, the right of access to the courts was not interfered with in this case because Plaintiff did suffer an actual injury.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). Here, Defendants essentially argue that their actions were rational because Plaintiff did not have any legal property. Because there is a question of fact as to whether the property was legal or personal property, neither party is entitled to summary judgment on this claim.

In summary, in the opinion of the undersigned, it is recommended that Plaintiff's motion for summary judgment be denied. It is further recommended that Defendants' motion for summary judgment should be granted in part and denied in part. Accordingly, it is recommended that Plaintiff's access to the courts claim and due process claim be dismissed, and Plaintiff's retaliation claim against Defendant Clark and equal protection claim against Defendants Clark and Smith remain in this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: August 24, 2016                    */s/ Timothy P. Greeley*
                                          Timothy P. Greeley
                                          United States Magistrate Judge