UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRENCE LEE TAYLOR #377991,

    Plaintiff,

v.

SCOTT SMITH, et al.,

    Defendants.

_____/

Case No.   2:14-cv-175

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Terrence Lee Taylor pursuant to 42 U.S.C. § 1983. The remaining claim involves an alleged denial of access to the courts against Defendants Scott Smith and Jeff Clark. Taylor alleges that his legal property was confiscated including a copy of his criminal trial transcript. Taylor asserts that, as a result, he was unable to prepare a complete motion for relief from judgment under MCR 6.502 regarding his first-degree murder and assault convictions, and his life without parole sentence.[1] Taylor's Rule 6.502 motion was ultimately filed in October 2016, and was denied in the state courts.

---

[1] Taylor was convicted of murdering Edward Arreguin. On October 1, 2000, Taylor entered a home while Sarah Agueros and Edward Arreguin were sleeping on a couch. Sarah woke when she heard a loud noise and called out to her sister Crystal, who responded from the bedroom. Taylor suddenly appeared and stated "I got you motherfuckers now, bitch." Sarah recognized Taylor, who had dated and had a child with her sister Crystal. The two had broken up and Taylor had moved out

Defendants filed a motion for summary judgment. (ECF No. 163.) I respectfully recommend that the Court grant Defendants' motion for summary judgment and dismiss this case. Although Taylor alleges that he was unable to bring his claim in 2013, the record establishes that he raised every issue in his motion for relief from judgment in 2016. It is the opinion of undersigned that Taylor cannot establish prejudice and Defendants are entitled to qualified immunity.

**Procedural history**

Taylor filed his original complaint on August 18, 2014. Taylor alleged that he transferred to the Chippewa Correctional Facility (URF) on June 19, 2013, with two state-issued duffle bags containing both legal property and personal property. Defendant Smith wrote Taylor a Notice of Intent for contraband/excess property. Prisoners are allowed one duffle bag, unless a hearing officer from the Department of Licensing and Regulatory Affairs (LARA) determines that the excess property is legal property. Prisoners can store excess legal property in a footlocker. Michigan Department of Corrections (MDOC) P.D. 04.07.112 (C), (O), (P). Excess property is considered contraband that must either be mailed out of the facility or destroyed. Taylor had a hearing before Assistant Resident Supervisor Defendant Clark. Defendant Clark separated Taylor's property into two stacks and told Taylor to select

---

one month before. Crystal had obtained a Personal Protection Order against Taylor. Taylor threatened to fight Sarah. Sarah attempted unsuccessfully to wake Arreguin. She then ran out of the house with Taylor pursuing her. Taylor caught Sarah and stabbed her with a kitchen knife several times. Arreguin jumped on Taylor's back allowing Sarah to get away. Arreguin was stabbed by Taylor fifteen times. Arreguin bled to death before help could arrive at the scene. Taylor also stabbed Crystal multiple times. (ECF No. 164-5.)

one of the stacks and to sign the hearing report. Taylor refused to sign the report and maintained that legal property was within each stack of property.

Taylor asserted claims of retaliation, equal protection, and denial of access to the courts. On January 15, 2016, this Court dismissed Defendants Woods, Norton, and Ross due to Taylor's failure to exhaust administrative remedies against them. (ECF No. 53.) On October 27, 2016, the Court dismissed Taylor's due process claim, and his access-to-the-courts claim because Taylor failed to show an actual injury. Taylor had filed a request for another copy of his transcript and had an attorney working on his criminal appeal. (ECF Nos. 100, 101.) Taylor alleged that he was forced to file his Rule 6.502 motion without his criminal trial transcripts.

On November 29, 2016, Taylor moved to amend his complaint to plead new allegations in support of his access-to-the-courts claim. (ECF No. 103.) On December 14, 2016, this Court denied Taylor's motion to amend the complaint explaining "that simply adding allegations to the complaint cannot revive the dismissed claims because Plaintiff has failed to show that the denial of his MCR 6.502 motion was due to the alleged action by Defendants of limiting his personal property and confiscating his transcripts or 'legal material.'" (ECF No 107.)

The Court held a jury trial on the remaining claims. After a jury verdict, the Court entered judgment for Defendants. (ECF No. 135.) Taylor appealed to the Sixth Circuit Court of Appeals. On August 30, 2018, the Sixth Circuit affirmed in part, but vacated the order denying Taylor's motion for leave to amend his complaint regarding his access-to-the-courts claim, explaining that this Court applied the wrong

standard to the motion "because an access-to-the-courts claim requires only that the underlying claim be non-frivolous." (ECF No. 154.)

## Amended complaint

Taylor's amended complaint was filed on October 2, 2018. (ECF No. 158.) Taylor alleges that he arrived at URF on June 19, 2013, with two duffle bags, each containing personal and legal property. The legal property consisted of a self-help litigation manual, jailhouse lawyer manual, legal notes, police reports, trial transcripts, and his motion requesting relief from judgment under MCR 6.502.

Taylor asserts that the MCR 6.502 motion was ready for filing in the state court. Taylor's motion allegedly included the following arguments:

    1)   the prosecutor failed to show an absence of heat of passion/sudden provocation to convict Taylor of felony murder;

    2)   the lesser included offense of involuntary manslaughter should not have been considered by the jury due to the absence of a heat of passion/sudden provocation element;

    3) the prosecutor used one of the victim's back injuries to argue that Taylor had time to take a "second look," despite the fact that there was no testimony that the victim tried to flee and the evidence established that Taylor and the victim engaged in a struggle due to the pattern of injuries;

    4)   the trial court failed to swear in the jury;

      5) counsel was ineffective for failing to request impeachment instructions; and

      6) the admission of the one of the victim's hospital photograph was for the purpose of eliciting sympathy and prejudice.

Taylor says that he tried to explain to Defendant Smith that he was authorized to possess legal property so that he could challenge his criminal conviction. Taylor says that Smith responded that "the last person who filed a lawsuit here found himself in the hole and eating out a straw, now if you don't have a copy of that legal hearing you claim you had you're not getting this property." (PageID.854-855.) Defendant Smith informed Taylor that he could only have one duffle bag of property. Defendant Smith wrote a Notice of Intent for contraband/excess property stating that Taylor did not have legal property.

On July 1, 2013, Defendant Clark conducted a hearing. The property was sorted into two stacks. Defendant Clark stated "'I heard you like to file petty lawsuits, you'll learn.' He then selected one of the piles and said, 'Here you get this.'" (PageID.855.) Taylor tried to explain that his completed 6.502 motion was in the other stack. Defendant Clark told Taylor to sign the hearing report. Taylor refused to sign the report and Defendant Clark ordered him to leave the office.

Taylor states that he was entitled to an automatic reversal of his conviction and a new trial because the jury was never sworn. Taylor explains that this was settled law in 2013. But this is no longer the case because of a 2015 change in the law. Taylor argues that the decision in *People v. Cain*, 408 Mich. 108 (2015), set

forth a new standard, and Taylor could not file his Rule 6.502 motion until after *Cain* was decided due to the 2013 confiscation of his motion and transcripts.[2]

In addition, Taylor asserts that he was prohibited from bringing a claim regarding newly discovered impeachment evidence against his son's mother, Crystal, until 2016. He explains that, in 2014, he learned that Crystal had committed perjury in a name change proceeding in 2007. She had testified that she was not denying Taylor contact with his son, which contradicted his trial strategy that he was under emotional distress due to being denied contact with his son. However, Taylor asserts that the witness had committed perjury during the name change proceeding by changing their son's name without Taylor's knowledge. Taylor explains that because of his son's name change, he could not locate him. Taylor explains that this casts doubt on Crystal's trial testimony.

Taylor also asserts that he was prohibited from raising an issue regarding resentencing due to recent changes in the law. Taylor cites *People v. Lockridge*, 488 Mich. 358 (2015), and asserts that his sentencing guideline score was enhanced based on factors not decided by a jury, which is now clearly prohibited.

Taylor also states that he could not obtain another copy of his trial transcripts until August of 2016. (PageID.856.)

---

[2] Taylor now concedes that the issue regarding the swearing of the jury, lacks merit.

**Taylor's motion for relief from judgment under MCR 6.502**

Taylor's motion for relief from judgment was dated October 6, 2016, and was filed in the Ingham County Circuit Court. (ECF No. 164-2). Taylor raised the following issues in his motion:

I. There was insufficient evidence to convict of felony murder where the prosecution failed to prove beyond a reasonable doubt the absence of heat of passion or sudden provocation. (PageID.940.)

II. Taylor was denied a fair trial by an impartial jury because the jury was not sworn before trial. (PageID.944.)

III. Taylor was denied effective assistance of counsel due to the failure to request impeachment instructions. (PageID.949.)

IV. Taylor was denied a fair trial when the court admitted a photograph taken in the hospital of Crystal Agueras, the 911 recording, prior bad act evidence, and allowed testimony of his threat to kill Agueras. (PageID.954.)

V. A new trial is warranted due to newly discovered impeachment evidence casting doubt on the truthfulness of Crystal Agueras. (PageID.960.)

VI. The Eighth Amendment was violated when Taylor was sentenced to life without parole for crimes committed when he was 18 years old. (PageID.964.)

> VII. Cumulative errors made the trial fundamentally unfair.

(*Id.*)

> VIII. Taylor's due process rights were violated when his sentence was enhanced based upon factors not considered by a jury or proven beyond a reasonable doubt. (PageID.966.)

On November 10, 2016, Ingham County Circuit Court Judge Clinton Canady III issued a well-reasoned Opinion and Order addressing each issue presented by Taylor on the merits. Judge Canady III denied Taylor's request for relief. (ECF No. 164-5.) The Michigan Court of Appeals and the Michigan Supreme Court denied Taylor's application for leave to appeal. (ECF Nos. 164-6, and 164-7.)

Judge Canady III noted that "no significant possibility exists that Defendant is innocent of the crimes." (ECF No.164-5, PageID.988.). Specifically, Judge Canady III determined that:

- The prosecution presented sufficient evidence at trial to establish that Taylor committed felony murder. (PageID.990.)
- Taylor entered Crystal Agueros' home through a window with intent to commit an assault. (PageID.992.)
- Taylor murdered Arreguin after he stabbed Sarah in the back and Arreguin interfered with Taylor's ability to "look for Crystal so he could stab her." (*Id.*)
- Taylor "committed the crime of first-degree home invasion, and he murdered Edward Arreguin because he essentially got in the way of

Defendant's intent to carry out his plan of stabbing Crystal. . . .there was sufficient evidence to sustain Defendant's conviction for felony murder. (*Id.*)

- Taylors' testimony at trial did not tend to show his judgment at the time of his criminal acts "was disturbed by hot blood." (PageID.995.)

- The Court properly swore in the jury: "Although the oath administered did not precisely mirror the oath set forth in M Crim JI 2.01, the Court finds that any error in failing to properly swear the jury did not undermine the proceedings. . . ." In addition, the Court reminded the jurors of their oath during jury instructions. (PageID.997-998.)

- Taylor's ineffective assistance of counsel claims regarding the lack of an impeachment instruction lack factual and legal merit, especially because the Court gave an instruction on impeachment. (PageID.999-1001.)

- The trial court did not err in admitting evidence of the hospital photograph of Crystal Agueros, the 911 recording, prior bad act evidence, and Taylor's threat to kill Crystal. (PageID.1001-1010.)

- Taylor's assertion that Crystal changed their son's name over six years after the trial had occurred, without providing him notice, is not exculpatory evidence and did not cast doubt on Crystal's trial testimony six years earlier. (PageID.1011.)

- Taylor failed to show that his sentencing score was based upon judicially-found facts and, by statute, Taylor was sentenced to "life without the possibility of parole."  (PageID.1015.)
- Taylor failed to show ineffective assistance of appellate counsel. (PageID.1015-1016.)

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**Analysis**

Defendants argue that they are entitled to the defense of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing

discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to support his access-to-the-courts claim, Taylor must show actual injury to pending or contemplated litigation. *Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

Defendants argue that Taylor cannot show that he suffered an actual injury to support his access-to-the-courts claim. Defendants point out that Taylor obtained a

copy of his trial transcripts and, in October 2016, filed a motion for relief from judgment raising each claim he was allegedly prevented from raising after his property was confiscated by Defendants. Defendants also note that Taylor's motion was denied on the merits of each claim.

According to the Sixth Circuit, "in *Lewis*[,] the Supreme Court held that only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). Thus, "even if someone delays a case or prevents it from coming to court, an actual injury will not be found unless the underlying claim would have been successful." *Mikko v. Davis*, 342 F. Supp. 2d 643, 647 (E.D. Mich. 2004).

An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Taylor was unsuccessful on every claim that he asserted in his motion for relief from judgment. Taylor has not shown that he was denied the ability to present any claim due to the alleged delay in bringing his motion for relief from judgment under MCR 6.502.

Taylor asserted in his amended complaint that the delay caused him to lose an automatic reversal and a new trial, which he would have received if he could have

raised his unsworn jury claim in 2013. The denial of his motion for relief from judgment was not based upon a change in the law, but rather because the jury was, in fact, properly sworn. Taylor now concedes that this claim lacks merit. (ECF No. 168, PageID.1050.)

In addition, Taylor raised two claims in his 2016 motion for relief from judgment which were admittedly unavailable to him in 2013. First, Taylor asserted that he learned, in 2014, that witness/victim Crystal Agueros lied in a 2007 change of name proceeding involving statements that she made involving Taylor's access to their son. Taylor has not explained how this alleged false statement, which allegedly occurred after his trial and conviction, is relevant to Crystal Aguero's 2001 trial testimony.[3] More importantly, Taylor did not know about this alleged false statement in 2013.Thus, logically, he could not have raised this issue in 2013. Second, Taylor raised an issue regarding a change in the law involving the factors that a court may consider during sentencing. The 2015 decision in *People v. Lockridge*, 498 Mich. 358 (2015), was not available to Taylor in 2013. Taylor raised both issues in his 2016 motion for relief from judgment. In addition, Taylor was sentenced to life without parole.

Taylor has had an opportunity to raise his claims in a motion for relief from judgment in the Michigan Courts. The Michigan Courts considered the merits of every claim asserted in his motion and denied his claims. Taylor has not shown any

---

3  Taylor argues that the denial of access to his son by Crystal Aguero was a mitigating factor involving his emotional state of mind at the time he committed each crime.

prejudice resulting from the alleged confiscation of his legal materials in 2013. Taylor has not established that the delay caused him to lose the ability to pursue an otherwise actionable claim or an opportunity to pursue a specific non-frivolous claim. "[A] delay becomes an injury only if it results in 'actual substantial prejudice to specific litigation.'" *Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003). In the opinion of the undersigned, summary judgment on Taylor's First Amendment claim is appropriate.

## Recommendation

I respectfully recommend that the Court grant Defendants' motion for summary judgment (ECF No. 164) and dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   July 29, 2019                                            /s/ *Maarten Vermaat*
                                                                       MAARTEN VERMAAT
                                                                       U.S. MAGISTRATE JUDGE